UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY OTT,

                                               Petitioner,

                                                                                                     Case # 23-CV-6653-FPG

v.                                                                                              DECISION AND ORDER

SUPERINTENDENT WYOMING CORRECTIONAL
FACILITY,

                                               Respondent.
_____

## INTRODUCTION

Pursuant to 28 U.S.C. § 2254, *pro se* Petitioner Anthony Ott brings this habeas petition to challenge his state-court convictions for second-degree murder and first-degree assault. ECF No. 1. Respondent Superintendent Wyoming Correctional Facility opposes the petition. ECF No. 12. For the reasons that follow, Petitioner's request for habeas relief is DENIED, and the petition is DISMISSED.

## BACKGROUND

In 2005, Petitioner was indicted in New York on charges of (1) second-degree murder, in violation of N.Y. Penal Law § 125.25(1); (2) second-degree murder, in violation of N.Y. Penal Law § 125.25(2); (3) first-degree assault, in violation of N.Y. Penal Law § 120.10(1); and (4) first-degree assault, in violation of N.Y. Penal Law § 120.10(3). ECF No. 12-2 at 53-54. The difference between the two murder charges was that the first charged "intentional murder," while the second charged "depraved mind murder." *People v. Fardan*, 82 N.Y.2d 638, 642 (1993). Similarly, the first assault charge was for "intentional" assault, whereas the second was for "depraved indifference" to human life. *People v. Pitterson*, 845 N.Y.S.2d 255, 256 (1st Dep't 2007). Petitioner was tried and convicted, but his convictions were reversed by the Appellate Division,

Fourth Department.  *See People v. Ott*, 85 N.Y.S.3d 647 (4th Dep't 2018).  Petitioner was granted a new trial.  *Id.*

In February 2019, Petitioner proceeded to trial on the "intentional" second-degree murder and assault charges.

The State's case in chief consisted of the following evidence.  On September 16, 2005, shortly before midnight, John Huss and his girlfriend left a bar located on Lawrence Street in Rochester, NY.  ECF No. 12-3 at 1099.  They walked towards a nearby parking lot on North Union Street, where their car was parked.  *Id.* at 1100.  As they approached the parking lot, they saw two Caucasian men—one in a white shirt (later identified as Travis Gray) and one in a gray shirt (later identified as Hank Hogan).  They were arguing with two Hispanic men—one in a blue shirt (later identified as Edwin Perez, Petitioner's father) and one in an orange shirt (later identified as Petitioner).  *Id.* at 1101-02.  Huss and his girlfriend entered his vehicle while the argument was ongoing.  After they entered the car, Huss noticed that the conflict had escalated.  The men had started punching each other.  *Id.* at 1104, 1120.   He then noticed a black car pull up near the fight, at which point Gray fell onto the black car, continuing to fight with Perez and Petitioner.  *Id.* at 1106, 1121.  Huss did not see Hogan any longer.  *Id.*  Gray fell to the ground.  *Id.* at 1123.  Huss saw Perez and Petitioner kicking and punching Gray, who was in a "fetal position" on the ground.  *Id.* at 1133; *see also id.* at 1127-28.

Meanwhile, Lisa Owen left a nearby bar and walked towards the parking lot on North Union Street, where her car was parked.  ECF No. 12-3 at 994-95.  As she entered the parking lot with her friend, Owen noticed Perez "standing sideways and [] looking to his right and looking down at something."  *Id.* at 996.  The parking lot was well lit.  *Id.* at 998.  As she continued to walk, she was able to observe the full scene:  "There were two men on the ground.  One man [in a

2

white shirt, *i.e.*, Gray] was on his hands and knees. . . . There was another person [wearing an orange shirt, *i.e.*, Petitioner] who was much skinnier than the person on the ground, on top of him, over him." *Id.* at 997.  Owen noticed that Petitioner was moving his right arm "up and down" at a 90-degree angle towards Gray's rib cage. *Id.* at 998.

Thinking they were just drunk people fighting, Owen yelled, "Hey." ECF No. 12-3 at 1000. At that point, Petitioner "jumped up." Gray fell over to his side, at which point Owen noticed that he was covered with blood. *Id.* He struggled to get up and fell on a car. *Id.* Owen and her friend ran over to attend to Gray while Perez and Petitioner backed away from the area. Owen noticed that, even as he backed away, Petitioner "never completely faced" Owen. *Id.* at 1001. "His hands were down in front of him and always tucked away from [her]." *Id.*

Soon, Petitioner and Perez "started to run through the cars" out of the parking lot. *Id.* at 1003. This coincided with Huss pulling his car out and backing it towards Perez and Petitioner. ECF No. 12-3 at 1124. Huss and his girlfriend exited the car. *Id.* at 1107-08. Gray was hunched over and coughing up blood. They ripped off Gray's shirt and noticed a wound on his abdomen. *Id.* at 1008. His "insides were coming out a bit." *Id.* at 1108-09.

As Petitioner and Perez ran towards "Lawrence Street up East Avenue," Owen chased after them. *Id.* at 1003. She stopped running after them when they veered into an alley towards North Union Street. *Id.* at 1004. By that point, Ronald Davis—a local bar owner—had exited a nearby bar after he had heard there was a fight in the parking lot off of North Union Street. *Id.* at 1031. Davis observed the two men running down the alleyway and began to follow them. *Id.* The men ran onto North Union Street and took a right turn, before entering a car parked on North Union Street. *Id.* at 1034. Davis caught up to the car and slammed his hand on the back of the trunk, which caused Perez and Petitioner to raise their hands up. *Id.* at 1050.

3

Jason Blanchard, then a police officer with the Rochester Police Department, was working as off-duty security at that time. ECF No. 12-3 at 957. He arrived on the scene at around this time. He observed Davis standing by the car, with Perez in the driver's seat and Petitioner in the front passenger's seat. *Id.* at 964. Soon, additional officers arrived, and Perez and Petitioner were detained. *Id.* at 969. Blanchard left the vehicle and investigated the parking lot. He observed Gray, who was being tended to others. Gray's "guts or intestines" were "basically laying on his stomach" due to wounds in his abdomen. *Id.* at 1038-39. Blanchard found Hogan in a separate section of the parking lot, laying on his side with his face down. *Id.* at 973. Blanchard observed that Hogan had a stab wound in his abdomen. *Id.* at 974. Blanchard stayed with Hogan while he received emergency medical treatment. *Id.* at 973.

After the parking lot was secured, Adam Harden, an officer with the Rochester Police Department, searched the area for "any sort of edged weapon." ECF No. 12-3 at 1058. He did not find any weapon in the parking lot. *Id.* at 1059. However, when he searched the vehicle into which Perez and Petitioner had fled, he found a knife in the "driver's door pocket" that was "partially covered by some napkins." *Id.* at 1061. He found another knife under the front passenger's seat. *Id.* at 1063. While there was no blood observed on the knife on the driver's side, there appeared to be blood on the knife located on the passenger's side. *Id.* at 1082, 1088. Forensic testing revealed that the knife on the passenger's side had DNA from Gray, Perez, and Hogan, as well as Petitioner's DNA on the handle of the knife. *Id.* at 1363, 1366, 1372, 1376.

Gray was taken to the hospital, where it was confirmed that he had eight stab wounds, including to the chest, abdomen, flank, and arm. ECF No. 12-3 at 1152, 1167, 1267. Gray survived for approximately one week before succumbing to his injuries. *Id.* at 1158. Hogan was taken to the hospital as well, where it was determined that he had a "very significant laceration" to "one of

the main vessels" in his heart. *Id.* at 1159. The wound was observed to be in the "posterior part of the back of the abdomen." *Id.* at 1160. Hogan also had an injury to his small intestine. *Id.* at 1161. It was also determined through blood draws that both Gray and Hogan were intoxicated at the time they were admitted. *See id.* at 1163.

Hogan survived and testified at trial. He stated that, as he and Gray were walking through the parking lot, he encountered Petitioner and Perez. Each group walked by the other initially, until Hogan was suddenly struck in the back and then the stomach. *See* ECF No. 12-3 at 1187. Hogan felt a burning sensation and intense pain. Then, "everything kind of went dark" until he woke up in the hospital. *Id.* at 1188.

Petitioner was taken into custody. ECF No. 12-3 at 1289. Naser Zenelovic, then an investigator with the Rochester Police Department, met with Petitioner in an interview room at the Public Safety Building. *Id.* at 1287-88. He did not observe any injuries on Petitioner's face or body, and Petitioner did not complain of any. *Id.* at 1292. On cross-examination, Zenelovic was asked by defense counsel whether he "interviewed [Petitioner]." *Id.* at 1295. Zenelovic respond, "I didn't. I went in and had a discussion with him." *Id.* On redirect, the prosecutor asked whether Zenelovic was able to "have that discussion" with Petitioner. *Id.* at 1296. Zenelovic testified that he did not, because "[h]e refused to speak to me." *Id.* This drew no objection from defense counsel.

After the close of proof, defense counsel requested jury instructions for first-degree manslaughter and second-degree assault as lesser-included offenses. ECF No. 12-3 at 1392-96. The trial court agreed to include an instruction on second-degree assault but not on first-degree manslaughter. *Id.* at 1402.

During summations, the prosecutor noted the fact that Petitioner "refused to say anything to Investigator Zenelovic." ECF No. 12-3 at 1430. Defense counsel's objection to the comment was sustained. *Id.* Defense counsel moved for a mistrial on the basis of the comment, which the trial court denied. *Id.* at 1435-36.

Ultimately, the jury found Petitioner guilty of second-degree murder and first-degree assault. ECF No. 12-3 at 1471-72. The trial court sentenced Petitioner to twenty-two years to life on the murder conviction and a concurrent twenty-year sentence for the assault conviction. *Id.* at 1498. The Fourth Department affirmed Petitioner's convictions, *People v. Ott*, 159 N.Y.S.3d 295 (4th Dep't 2021), the Court of Appeals denied leave to appeal, *People v. Ott*, 38 N.Y.3d 953 (2022) (table op.), and on November 7, 2022, the Supreme Court denied the petition for a writ of certiorari. *Ott v. New York*, 143 S. Ct. 403 (2022) (mem. op.). In November 2023, Petitioner filed the present action. ECF No. 1.

## LEGAL STANDARD

28 U.S.C. § 2254 allows a petitioner to challenge his imprisonment from a state criminal judgment on the ground that it is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner raises a claim that was adjudicated in state-court proceedings, he is only entitled to relief if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1), (2).

"A principle is 'clearly established Federal law' for § 2254(d)(1) purposes only when it is embodied in a Supreme Court holding, framed at the appropriate level of generality." *Washington*

6

*v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks, brackets, and citations omitted). "A state court decision is 'contrary to' such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Id.* (internal quotation marks omitted). "An unreasonable application occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case, so that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and ellipses omitted).

In analyzing a habeas claim, "[f]ederal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with clear and convincing evidence." *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 318 (N.D.N.Y. 2018) (internal quotation marks omitted). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Id.* Because the Court of Appeals denied Petitioner's request for review, the Court's review focuses on the Appellate Division's decision. *See Licausi v. Griffin*, 460 F. Supp. 3d 242, 258 (E.D.N.Y. 2020) ("Courts examine the 'last reasoned decision' by the state courts in determining whether a federal claim was adjudicated on the merits.").

Where, as here, the petitioner is proceeding *pro se*, the district court must read the pleadings liberally and construe them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

**DISCUSSION**

Petitioner contests his convictions on four grounds. First, the trial court erred when it refused to charge first-degree manslaughter as a lesser-included offense to the murder charge. ECF No. 1 at 6. Second, the trial court erred when it permitted testimony regarding the showup identification procedure. *Id.* at 7. Third, the trial court vindictively sentenced Petitioner to a term of twenty-two years to life on the murder conviction. *Id.* Fourth, the trial court improperly admitted testimony that Petitioner had refused to talk with police after he was detained. *Id.* The Court examines each issue below.

I. **Refusal to Instruct on First-Degree Manslaughter**

On direct appeal, Petitioner argued that the trial court erred when it refused to instruct the jury on first-degree manslaughter as a lesser-included offense. ECF No. 12-2 at 15-21. Petitioner asserted that, viewed in the light most favorable to him, a jury could have reasonably concluded that the killing was not "the result of a premeditated or calculated act" but rather "occurred during a fight." *Id.* at 17. The Fourth Department disagreed. While it observed that "manslaughter in the first degree is a lesser included offense of second-degree murder," there was no "reasonable view of the evidence" that would permit the jury to "acquit the defendant on the higher count and still find him guilty on the lesser one." *Ott*, 159 N.Y.S.3d at 297.

Petitioner's argument is not a basis for habeas relief. "The Supreme Court has held that due process requires a trial court to submit jury instructions regarding lesser-included offenses in capital cases, but has never addressed whether the Due Process Clause would require the giving of such instructions in a noncapital case." *Strong v. People*, No. 20-CV-45, 2022 WL 3716567, at *9 (W.D.N.Y. Aug. 29, 2022) (internal quotation marks and citation omitted). "In the absence of clearly established Supreme Court law, the Second Circuit has held that federal courts may not

consider habeas claims based on a trial court's failure to instruct on a lesser included offense in a noncapital case." *Brito v. Keyser*, No. 19-CV-4197, 2020 WL 995826, at *2 (S.D.N.Y. Mar. 2, 2020) (internal quotation marks omitted).

Petitioner's first claim must be denied.

## II. Showup Identification Procedure

In his direct appeal, Petitioner argued that the trial court erroneously admitted hearsay testimony from a police officer indicating that certain witnesses had identified Petitioner during a showup identification procedure, despite the fact that the witnesses themselves "were unable to identify [Petitioner] at trial." ECF No. 12-2 at 32. Petitioner challenged that allegedly improper "bolstering identification evidence." *Id.* at 33. The Fourth Department rejected that argument on the merits. *Ott*, 159 N.Y.S.3d at 298-99. In his petition, Petitioner renews that claim. *See* ECF No. 1 at 7.

Petitioner's claim is not "cognizable on federal habeas review." *Campbell v. Poole*, 555 F. Supp. 2d 345, 371 (W.D.N.Y. 2008). "Courts in this Circuit has found that although bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial." *Id.* (internal quotation marks and brackets omitted); *Santiago v. Uhler*, No. 18-CV-2849, 2022 WL 18096765, at *17 (S.D.N.Y. Dec. 7, 2022) (collecting cases).

Accordingly, Plaintiff's argument is not grounds for habeas relief.

## III. Sentencing

After Petitioner's first trial and sentencing, which was held before Justice Stephen R. Sirkin, a discrepancy arose. The transcript of the first sentencing indicates that the original sentence was a minimum term of *twenty* years for the murder conviction. ECF No. 12-3 at 743.

However, the certificate of conviction reflects a minimum sentence of *twenty-two* years. ECF No. 12-2 at 347. As a result, the Fourth Department directed that Petitioner be resentenced. *People v. Ott*, 921 N.Y.S.2d 450, 453 (4th Dep't 2011).

The resentencing was handled by a different judge, Justice Francis A. Affronti. *See* ECF No. 12-3 at 745. The parties contested what had occurred at the first sentencing. The prosecutor insisted that the judge had, in fact, pronounced a twenty-two year minimum sentence. *See id.* at 748-50. This assertion is supported by the fact that Petitioner's original notice of appeal—filed by the attorney who represented Petitioner at the original sentencing—recites a twenty-two year term, ECF No. 12-2 at 128. Nevertheless, Justice Affronti relied on the transcript to sentence Petitioner to a minimum term of twenty years on the murder conviction. ECF No. 12-3 at 759-60. Subsequently, Petitioner obtained a new trial, *see People v. Ott*, 85 N.Y.S.3d 647 (4th Dep't 2018), which led to the second trial, convictions, and sentence at issue in this petition.

Petitioner's retrial and third sentencing were overseen by Justice Alex Renzi. *See* ECF No. 12-3 at 762. At sentencing, Justice Renzi stated that he intended to sentence Petitioner to the same term imposed by Justice Sirkin: a term of twenty-two years to life on the murder conviction. *Id.* at 1498. On direct appeal, Petitioner argued that this sentence was "vindictive" insofar as Justice Renzi imposed a greater sentence than what he had previously received. ECF No. 12-2 at 6, 21-24. In the alternative, he asserted that counsel was ineffective for failing to object "to the sentence as vindictive." ECF No. 12-2 at 24. The Fourth Department found the first argument unpreserved because his counsel had failed to timely object. *Ott*, 159 N.Y.S.3d at 299. It found that the second had "no merit." *Id.* at 298. Petitioner now maintains the same arguments in his petition. *See* ECF No. 1 at 7; ECF No. 15 at 10.

10

"Due process requires that, after a defendant has successfully attacked his conviction, vindictiveness must play no part in the sentence he later receives." *Somerville v. Hunt*, 695 F.3d 218, 222 (2d Cir. 2012). "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear." *Id.* "Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose." *Id.* (internal quotation marks and citation omitted). "Once it applies, this presumption can be rebutted by objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* (internal quotation marks omitted). However, the presumption does not apply where the defendant is resentenced by a different judge. *See Texas v. McCullough*, 475 U.S. 134, 142 n.4 (1986); *see also United States v. Perez*, 904 F.2d 142, 146 (2d Cir. 1990). In that case, "the burden remains on the defendant to show actual vindictiveness upon resentencing." *Perez*, 904 F.2d at 146.

Even leaving aside the fact that the Fourth Department found Petitioner's vindictiveness argument unpreserved,[1] it fails on the merits. As an initial matter, Petitioner is not entitled to a presumption of vindictiveness given that a different judge presided over his sentencing after the second trial. *See id.* Substantively, Petitioner fails to marshal any evidence of vindictiveness on

---

[1] "[A] court may not grant a habeas petition if the state court determination provides an independent basis under state law for denying the federal claim, which adequately supports the result." *Purdie v. LaClaire*, No. 08-CV-5108, 2010 WL 2838523, at *4 (E.D.N.Y. June 7, 2010). Under New York law, a defendant is "required to raise an objection to his sentencing contemporaneously under the preservation rule to avoid surrendering his claim on appeal." *Watkins v. Artus*, No. 08-CV-5891, 2010 WL 5060861, at *15 (S.D.N.Y. July 22, 2010); *see also Rhagi v. Artuz*, 309 F.3d 103, 107 (2d Cir. 2002) (collecting cases). "Decisions in this Circuit have found the requirement of objecting to the sentence at the time of sentencing to be an adequate and independent state ground" barring habeas relief. *Kanani v. Phillips*, No. 03-CV-2534, 2004 WL 2296128, at *24 (S.D.N.Y. Oct. 13, 2004) (collecting cases). The Court does not address this issue because Petitioner's claim fails on the merits.

11

the part of Justice Renzi. To the contrary, the transcript establishes that he intended to resentence Petitioner to the same term he received after his original trial. *See* ECF No. 12-3 at 1498. Justice Renzi took the position that Judge Sirkin had, in fact, sentenced Petitioner to a minimum term of twenty-two years; indeed, when the prosecutor noted the discrepancy that had led to Petitioner's resentencing, Justice Renzi reaffirmed that "the original was[] twenty-two minimum, maximum life." *Id.* at 1500. As stated above, this conclusion finds support in the record. Accordingly, Petitioner has failed to establish "any improper motivation" on the part of Judge Renzi that infected his sentencing decision. *See Perez*, 904 F.2d at 147.

For these reasons, Petitioner's vindictiveness claim fails. And because the "[f]ailure to make a meritless argument does not amount to ineffective assistance," *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999), *abrogated on other grounds by Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003), Petitioner's ineffective-assistance claim premised on said vindictiveness also fails.

Habeas relief is denied on this ground.[2]

## IV. Petitioner's Refusal to Talk to Police

Finally, Petitioner argues that it was error for Zenelovic to testify that Petitioner refused to speak with police after he was arrested. ECF No. 1 at 7. Petitioner faults both the trial court for admitting this testimony, and defense counsel for failing to object to its admission. *Id.* On direct appeal, the Fourth Department found that the trial court properly admitted the testimony because "[Petitioner] [had] opened the door to [it]." *Ott*, 159 N.Y.S.3d at 298. The Fourth Department likewise rejected the claim of ineffective assistance of counsel, stating that Petitioner had "failed

---

[2] Since Petitioner pursued only a vindictiveness claim in the state courts and in his habeas petition, the Court does not address—and takes no position on—whether Justice Renzi's rationale was otherwise proper. *See generally United States v. Bernard*, No. 23-6646, 2024 WL 1904576, at *3 (2d Cir. May 1, 2024) (discussing due-process limitations with respect to the information on which a sentencing judge may rely).

to demonstrate the absence of strategic or other legitimate explanations" for counsel's decision. *Id.* Petitioner renews these arguments in his petition. ECF No. 1 at 7.

Petitioner's claim lacks merit, whether analyzed in terms of the trial court's or defense counsel's error. With respect to the former, "errors of state evidentiary law are not cognizable on habeas review, and thus erroneously admitted hearsay statements cannot provide a basis for federal habeas relief unless the evidentiary error so undermined the fairness of the trial as to violate the petitioner's constitutional right to due process." *Sorrentino v. LaValley*, No. 12-CV-7668, 2016 WL 11482062, at *16 (S.D.N.Y. Feb. 3, 2016) (internal citation omitted). "[I]n determining whether the introduction of a particular hearsay statement violated a petitioner's constitutional right to due process, a habeas court must conduct a two-prong analysis that inquires: (1) whether the trial court's evidentiary ruling was erroneous under state law, and (2) whether the error deprived the petitioner of the constitutional right to a fundamentally fair trial." *Id.* Petitioner cannot satisfy the second prong.

The evidence against Petitioner was overwhelming and almost entirely unimpeached. Petitioner's identity as the person who stabbed Gray and Hogan could not be reasonably disputed: multiple witnesses observed a man in an orange shirt attacking a man in a white shirt, after which the man in the orange shirt fled around the block to a vehicle parked on North Union Street. Petitioner was found in that vehicle, wearing an orange shirt, with a bloody knife under his seat. DNA on the knife matched that of Petitioner and Gray.

Similarly, the evidence establishing Petitioner's intent—and disproving his claim of self-defense—was overwhelming. The Fourth Department's summary of the facts is worth quoting:

> [T]here is no reasonable view of the evidence whereby [Petitioner] intended to cause serious physical injury to [Gray] but did not intend to cause his death when [Petitioner] inflicted the final stab wounds into the chest of [Gray], who was on the ground and not resisting. [Petitioner] had already subdued [Hogan] by stabbing him

> in the abdomen with such force that [his] intestines were protruding from his torso. [Petitioner], the only person in the incident who was armed, then stabbed [Gray] eight times, causing punctures to, inter alia, [his] heart, right lung, colon, and pancreas.

*Ott*, 159 N.Y.S.3d at 297. Further undermining a claim of self-defense is Petitioner's lack of injuries after the events of that night. *See* ECF No. 12-3 at 1292.

Given this factual record, Zenelovic's comment that Petitioner refused to speak to police did not deprive Petitioner of a fundamentally fair trial. *See Pagan v. Brown*, 485 F. App'x 454, 456 (2d Cir. 2012) (summary order) (finding admission of evidence that the defendant invoked his right to remain silent harmless because the evidence "was more than sufficient to establish [the defendant's] guilt"); *Jackson v. Heath*, No. 10-CV-3449, 2010 WL 3075557, at *19 (S.D.N.Y. Aug. 6, 2010) (collecting cases).

For the same reason, Petitioner cannot demonstrate that his trial counsel was ineffective. To establish a claim for ineffective assistance of counsel under the Sixth Amendment, a petitioner must show both "(1) that counsel's representation was objectively deficient, and (2) ensuing prejudice." *Boyland v. Artus*, 734 F. App'x 18, 20 (2d Cir. 2018) (summary order); *see generally Strickland v. Washington*, 466 U.S. 668 (1984). "At the second [step], [courts] ask not whether counsel's error had some conceivable effect on the outcome of the proceeding, but whether it so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Boyland*, 734 F. App'x at 20 (internal quotation marks and citations omitted). Even if Petitioner could show that trial counsel's failure to object was objectively deficient, for the reasons just stated, he cannot show "prejudice given the overwhelming evidence of his guilt." *Witherspoon v. Colvin*, No. 18-CV-4816, 2022 WL 18999831, at *18 (E.D.N.Y. Aug. 31, 2022); *see also, e.g.*, *Allan v. Conway*, No. 08-CV-4894, 2012 WL 70839, at *33 (E.D.N.Y. Jan. 10, 2012) ("In light of the prosecution's overwhelming evidence against petitioner,

14

the admission of the alleged hearsay testimony at issue did not create a reasonable probability that but for counsel's failure to object, the trial verdict would have been different.").

Habeas relief is not warranted due to the admission of Zenelovic's testimony.

## CONCLUSION

Accordingly, Petitioner's request for habeas relief is DENIED and his petition (ECF No. 1) is DISMISSED. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated: September 25, 2024
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York